R. CURTIS ROBINSON, DEFENDANT IN ERROR, v. THE CENTENARY FUND AND PREACHERS' AID SOCIETY OF THE NEW JERSEY ANNUAL CONFERENCE OF THE METHODIST EPISCOPAL CHURCH, EXECUTOR, &c., OF EZRA B. LAKE, DECEASED, PLAINTIFF IN ERROR.

Argued December 2, 1902—Decided March 2, 1903.

1. R. and L. entered into the following agreement: "Having disposed of the *Ocean City Sentinel* to Fenton & Robinson, I hereby agree not to start, directly or indirectly, or cause to be started or interested in any manner, a newspaper or printing office within Ocean City for the term of twenty-five years (25 years) under a penalty of twelve hundred dollars ($1,200)." *Held,* that the $1,200 was not a penalty, but liquidated damages.

2. When the term "penalty" is used in the agreement and a single act is forbidden, if upon breach it is not possible to ascertain the damages, then the sum named may be recovered, if upon any reasonable view of the case the damages might equal that sum.

On error to the Supreme Court.

This case was tried at the April Term, 1902, of the Cape May Circuit Court, before Mr. Justice Hendrickson and a jury, and a verdict was directed for the plaintiff for $1,200 damages.

For the plaintiff in error, *S. Stanger Iszard.*

For the defendant in error, *Thompson & Cole.*

The opinion of the court was delivered by

VROOM, J. In the year 1885 the plaintiff, R. Curtis Robinson, and his assignor purchased from one Ezra B. Lake a newspaper known as the *Ocean City Sentinel,* published at Ocean City, in the county of Cape May. In part consideration of the purchase the said Lake entered into the following agreement with the defendant in error and his assignor:

"OCEAN CITY, August 6, 1885.

"Having disposed of the *Ocean City Sentinel* to Fenton & Robinson, I hereby agree not to start, directly or indirectly, or cause to be started or interested in any manner, a newspaper or printing office within Ocean City for the term of twenty-five years (25 years) under a penalty of twelve hundred dollars ($1,200).

"(Signed)          E. B. LAKE."

In 1899 Lake purchased the capital stock of the Ocean City Ledger Publishing Company, the publisher of the *Ocean City Ledger,* a weekly paper in said city, then and still published, and also the plant, presses and other equipment of said newspaper. No proof of damages was offered at the trial, and the trial judge, in his charge, said that the question turned upon the proper construction of the agreement in question as to whether the plaintiff shall recover the amount of $1,200, to be regarded as the amount of damages fixed by the parties to the contract in case of a breach, or whether the amount named is to be treated as a penalty merely, the amount of damages to be proved and to be assessed by a jury. The conclusion reached by the learned trial judge was that, upon the whole case, the sum named should be regarded as the amount fixed by the parties to be paid in case of a breach.

In *Monmouth Park Association* v. *Wallis Iron Works,* 26 *Vroom* 132, 140, Mr. Justice Dixon held that, "in determining whether a sum, which contracting parties have declared payable on default in performance of their contract, is to be deemed a penalty or liquidated damages, the general rule is that the agreement of the parties will be effectuated. Their

agreement will, however, be ascertained by considering, not only particular words in a contract, but the whole scope of their bargain, including the subject to which it refers."

It is well settled that whether the entire sum specified in the agreement can be recovered does not depend entirely upon whether, in the agreement, it is termed "penalty" or "liquidated damages."

As was said in *Whitefield* v. *Levy,* 6 *Vroom* 149: "Calling the sum named a penalty or liquidated damages is not conclusive, if the intention appears otherwise from the consideration of the whole agreement; if it be doubtful, from the whole agreement, whether it is intended to be a penalty or stipulated damages, it will be construed as a penalty, and if it is called a penalty, it will be held to be such, unless that construction is overcome by a very clear intention to the contrary, derived from the other parts of the agreement."

And in 19 *Am. & Eng. Encycl. L.* 400: "No rule as to distinguishing between liquidated damages and penalties is better settled than that the language of the parties to the contract and the terms employed descriptive of the amount to be paid are not conclusive of the interpretation and legal effect. Thus a sum denominated 'liquidated damages' by the parties may nevertheless be held to be a penalty; and though the word 'penalty' be used, the sum so termed may be deemed liquidated damages."

Thus, in the case of *Sainter* v. *Ferguson,* 7 *C. B.* 716, A and B entered into the following agreement: "In consideration that A, of Maederfield, surgeon and apothecary, will engage me, the undersigned B, as assistant to him as surgeon, &c., I, the said B, promise the said A that I will not at any time practice as surgeon or apothecary at M. or within seven miles thereof, under a penalty of 500 pounds; and I, the said A, do hereby agree with the said B to engage the said B as assistant to me as a surgeon, &c., on the terms aforesaid." *Held,* that the £500 was not a penalty, but liquidated damages. Chief Justice Wilde said: "It was clearly settled that whether the sum mentioned in the agreement to be paid for a breach is to be treated as a penalty or as ascertained and

liquidated damages is a question of law, to be decided by the judge upon consideration of the whole instrument. This agreement does not prohibit the defendant doing several distinct and independent acts, each of which might be incapable of exact estimation, nor does it involve any of the circumstances that have, in any of the cases, induced the court to hold the sum to be a penalty only. The whole object of the plaintiff was to protect himself from a rival, and it would be impossible, in such a case, to say precisely what damage might result to him from a breach of the agreement. It is not unreasonable therefore that the parties should themselves fix and ascertain the sum that should be paid. And I think we can only give effect to the contract of the parties by holding the £500 to be liquidated damages."

Again, in *Monmouth Park Association* v. *Wallis Iron Works, supra,* Mr. Justice Dixon says: "But when damages are to be ascertained by the breach of a single stipulation, and they are uncertain in amount and not readily susceptible of proof under the rules of evidence, then, if the parties have agreed upon a sum as the measure of compensation for the breach, and that sum is not disproportionate to the presumable loss, it may be recovered as liquidated damages." These are the general principles laid down in the text-books and recognized in the judicial reports of this state. *Cheddicks, Executor,* v. *Marsh,* 1 *Zab.* 463; *Whitefield* v. *Levy,* 6 *Vroom* 149; *Hoagland* v. *Segur,* 9 *Id.* 230; *Lansing* v. *Dodd,* 16 *Id.* 525.

To the same effect is the recent decision in the Supreme Court of the United States, in the case of the *Sun Printing and Publishing Association* v. *Moore,* 183 *U. S.* 642, where it is held "whether a particular stipulation to pay a sum of money is to be treated as a penalty or as an agreed ascertainment of damages is to be determined by the contract, and it is the duty of the court, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract."

The rule may then be fairly stated to be that when the term "penalty" is used in the agreement and a single act is forbidden, if, upon breach, it is not possible to ascertain the

damages, then the sum named as penalty may be recovered, if, on any reasonable view of the case, the damages might equal that sum.

The agreement is not one whereby Lake agrees not to do several things. The single stipulation was that he would not start, directly or indirectly, or cause to be started or interested in any manner in any rival newspaper or printing office; or, in other words, that the personal influence acquired by him through his connection with the concern he had sold should not be put in a rival establishment. And it may well be said that the doing it, in any manner, is the doing of a single act which it is the sole object of the agreement to prevent.

A moment's consideration will demonstrate the uncertain character of the damages, and that no feasible way exists of determining the same or of finding out how or in what way the influence of the vendor may be secretly exerted in this rival establishment. The very object and intent of the agreement in question was to forbid any pecuniary interest in a rival newspaper or printing office. As was said by Chief Justice Wilde, in the case of *Sainter* v. *Ferguson, supra,* the whole object of the plaintiff was to protect himself from a rival, and it is not unreasonable that the parties themselves fix and determine the sum that should be paid.

I am of the opinion that the intention of the parties will only be effectuated by considering the sum named in the agreement liquidated damages, and to be paid by the party committing the breach.

The judgment of the Supreme Court should be affirmed.

*For affirmance*—VAN SYCKEL, FORT, GARRETSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM.    8.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON.    4.